1
2
3
4
5

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

6
7

| | |
|---|---|
| **JUAN ESPINOZA, et al.,** | **1:07-cv-01145-OWW-SMS** |
|                  **Plaintiffs,** | **MEMORANDUM DECISION RE: MOTIONS FOR SUMMARY JUDGMENT (Docs. 90, 142)** |
|    **v.** | |
| **COUNTY OF FRESNO,** | |
|               **Defendant.** | |

### I. <u>INTRODUCTION</u>.

Plaintiffs proceed with this action against the County of Fresno ("County") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 *et seq.* (Doc. 27).

On May 1, 2009, the County filed a motion for summary judgment. (Doc. 90). Plaintiffs filed opposition on May 20, 2009. (Doc. 100). On June 18, 2009, the court stayed this action pending the Ninth Circuit's decision in *Bamonte v. City of Mesa*, 598 F.3d 1217 (2010). (Doc. 117). The court lifted the stay on April 8, 2010. (Doc. 123).

Plaintiffs filed a motion for summary judgment on January 3, 2011. (Doc. 142). The County filed opposition on February 22, 2011. (Doc. 144). Plaintiffs filed a reply on March 1, 2011. (Doc. 145).

///

**1**

1    On May 19, 2011, the parties submitted a joint statement
2  setting forth their respective positions regarding *Bamonte's* impact
3  on this case.  (Doc. 151).

## II.  **FACTUAL BACKGROUND**.

5    Plaintiffs are Fresno County Deputy Sheriffs that serve as
6  Patrol Deputies and Courtroom Deputies. In connection with their
7  duty assignments, Patrol Deputies and Courtroom Deputies wear
8  "Class 'B' Uniforms" comprised of a long or short-sleeve shirt,
9  shoulder patches sewn onto the sleeves, rank insignia (if
10  applicable), badge, nameplate, trousers/skirts, belts, and
11  footgear.  The County also issues Sheriff's Patrol Deputies and
12  Courtroom Deputies a duty belt to hold various safety gear and
13  equipment.  The safety gear and equipment worn on a duty belt
14  include a duty weapon, holster, handcuffs, handcuffs carrier,
15  collapsible baton, baton holder, ammunition, two ammunition
16  magazines, flashlight, radio, radio holder, chemical spray and
17  holder, latex gloves, and glove holder.  The County does not
18  compensate deputies for the time it takes them to don and doff
19  their uniforms and safety gear before and after their regularly
20  scheduled shifts.

21    The County operates a "Take Home Patrol Vehicle Program"
22  ("THPVP"), pursuant to which deputies are allowed to commute to and
23  from their residences to their duty assignments in a patrol vehicle
24  assigned to them.  Participation in the THPVP is voluntary.
25  Participants in the THPVP are not compensated for the time spent
26  commuting to and from their duty assignments or for time spent
27  cleaning and maintaining their vehicles outside of on-duty time.
28  ///

1    The County requires deputies to qualify their duty weapons on
2    a quarterly basis.  The County provides on-duty time to participate
3    in weapons qualification.  County policy provides that overtime may
4    be approved for weapons qualification outside of on-duty time, but
5    such  overtime  is  discouraged  as  on-duty  time  is  provided.
6    Plaintiffs  contend  they  are  denied  overtime  compensation  for
7    required  off-duty  qualification  notwithstanding  the  County's
8    policy.

9    Courtroom Deputies are entitled to an unpaid meal period.
10   There is no requirement that Courtroom Deputies remain in uniform
11   during their meal break, however, if they remain in uniform, they
12   are required to keep their radios on and may be called upon to
13   perform regular employment duties.

14                   **III.  <u>LEGAL STANDARD</u>.**

15   Summary  judgment/adjudication  is  appropriate  when  "the
16   pleadings, the discovery and disclosure materials on file, and any
17   affidavits show that there is no genuine issue as to any material
18   fact and that the movant is entitled to judgment as a matter of
19   law." Fed. R. Civ. P. 56(c). The movant "always bears the initial
20   responsibility of informing the district court of the basis for its
21   motion,  and  identifying  those  portions  of  the  pleadings,
22   depositions, answers to interrogatories, and admissions on file,
23   together with the affidavits, if any, which it believes demonstrate
24   the absence of a genuine issue of material fact." *Celotex Corp. v.*
25   *Catrett*,  477  U.S.  317,  323  (1986)  (internal  quotation  marks
26   omitted).

27   Where the movant will have the burden of proof on an issue at
28   trial, it must "affirmatively demonstrate that no reasonable trier

**3**

1   of fact could find other than for the moving party." *Soremekun v.*
2   *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  With
3   respect to an issue as to which the non-moving party will have the
4   burden of proof, the movant "can prevail merely by pointing out
5   that there is an absence of evidence to support the nonmoving
6   party's case." *Soremekun*, 509 F.3d at 984.

7        When a motion for summary judgment is properly made and
8   supported, the non-movant cannot defeat the motion by resting upon
9   the allegations or denials of its own pleading, rather the
10  "non-moving party must set forth, by affidavit or as otherwise
11  provided in Rule 56, 'specific facts showing that there is a
12  genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting
13  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A
14  non-movant's bald assertions or a mere scintilla of evidence in his
15  favor are both insufficient to withstand summary judgment." *FTC v.*
16  *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must
17  show a genuine issue of material fact by presenting affirmative
18  evidence from which a jury could find in his favor." Id. (emphasis
19  in original). "[S]ummary judgment will not lie if [a] dispute about
20  a material fact is 'genuine,' that is, if the evidence is such that
21  a reasonable jury could return a verdict for the nonmoving party."
22  *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute
23  exists, a district court does not make credibility determinations;
24  rather, the "evidence of the non-movant is to be believed, and all
25  justifiable inferences are to be drawn in his favor." *Id*. at 255.
26  ///
27  ///
28

**4**

**IV. <u>DISCUSSION</u>.**

**A. Donning and Doffing Claims**

The FLSA requires employers to pay employees for all hours worked. *E.g., Bamonte v. City of Mesa*, 598 F.3d 1217, 1220 (9th Cir. 2010). Early Supreme Court cases interpreting the scope of the FLSA defined the term "work" broadly as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005) (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).

In 1945, Congress passed the Portal-to-Portal Act, amending the FLSA in order to provide remedies to employers faced with "wholly unexpected liabilities" arising out of the expansive reach of the FSLA that evolved from the Supreme Court's jurisprudence. *IBP*, 546 U.S. at 26. Part III of the Portal-to-Portal Act provides in relevant part:

> Relief from Certain Future Claims Under the Fair Labor Standards Act of 1938 . . .
>
> (a) Activities not compensable. Except as provided in subsection (b), no employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after the date of the enactment of this Act--
>
> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,

**5**

1    which occur either prior to the time on any particular
     workday at which such employee commences, or subsequent
2    to the time on any particular workday at which he ceases,
     such principal activity or activities."
3

4    29 U.S.C § 254 (2011).

5         The Supreme Court first addressed the extent to which donning

6    and doffing is compensable under the FSLA as amended by the Portal-

7    to-Portal Act in *Steiner v. Mitchell*, 350 U.S. 247, 248 (1956). The

8    High Court held that

9         activities [] such as the donning and doffing of
          specialized protective gear, that are "performed either
10        before or after the regular work shift, on or off the
          production line, are compensable under the
11        portal-to-portal provisions of the Fair Labor Standards
          Act if those activities are an integral and indispensable
12        part of the principal activities for which covered
          workmen are employed and are not specifically excluded by
13        Section 4(a)(1)."

14   *Id.* Any activity that is "integral and indispensable" to a

15   "principal activity" is itself a "principal activity" under the

16   Portal-to-Portal Act. *IBP*, 546 U.S. at 37. Whether an activity is

17   "integral and indispensable to a principal activity" is "context-

18   specific" inquiry. *E.g., Bamonte*, 598 F.3d at 1224.

19        Pursuant to the law of the Ninth Circuit, determination of

20   whether donning and doffing is compensable under the FSLA entails

21   a three step analysis. *Id.* at 1224-25. First, a court must

22   address the threshold inquiry of whether the activity in question

23   constitutes "work" within the meaning of the FLSA. *Id.* Second, a

24   court must determine whether the activity is contextually "integral

25   and indispensable," i.e. "necessary to the principal work performed

26   and done for the benefit of the employer." *Id.* Finally, the court

27   considers whether the activity is *de minimis*. *Id.* at 1224.

28

**6**

In *Bamonte*, the Ninth Circuit assumed *arguendo* that a police officer's donning and doffing of uniforms and related gear constitutes "work" under the FLSA. 598 F.3d at 1225. However, the Ninth Circuit concluded that "the specific activity" at issue in *Bamonte*—donning and doffing at the police station—was not "integral and indispensable" because the officers had the option of donning and doffing at home. *Id.* at 1220, 1230-31. The Ninth Circuit reasoned that requiring donning and doffing to be performed at the employer's premises in order to be compensable:

> supports Congressional goals by clarifying the circumstances under which employees must be compensated for the donning and doffing of uniforms and gear, thereby preventing unexpected and substantial liability to employers. Consistent with these principles...donning and doffing of police uniforms and gear are not compensable...[where] officers retain the complete option and ability to don and doff their uniforms and gear at home.

*Id.* at 1231.

Here, as in *Bamonte*, it is undisputed there is no applicable law or rule of the employer that requires deputies to don and doff their uniforms or safety equipment on County property. (Doc. 101, Plaintiffs' Response to DUMF Nos. 16, 17). Plaintiffs begrudgingly concede that to the extent there is no law, rule, or circumstance that requires Plaintiff to don and doff on County property, *Bamonte* forecloses their donning and doffing claims. (Doc. 151, Statement at 1-2). Plaintiffs contend that whether deputies have the "option and ability" to don and doff their uniforms and equipment at home is a disputed factual issue. (Doc. 100, Opposition at 10-11). Plaintiffs advance the following arguments:

> First, deputies come into contact with hazardous substances while performing their duties, such as blood,

other bodily fluids, and contagious diseases that put deputies' families at risk if they change at home. Second, the protective gear that deputies must carry on duty—such as firearms, chemical sprays, ammunition magazines, and the heavy duty belts—can injure deputies and their family members if they bring the items home. Third, when deputies bring their gear home, the risk of loss and theft increases as well as the risk that they will not have required gear when reporting to duty. Finally, by identifying themselves as peace officers, they can simultaneously become targets of violence by criminals and beacons of assistance to the public because of their dual responsibilities of apprehending criminals and protecting the public—roles for which they are not well-equipped while off duty.

(Doc. 100, Opposition at 10-11) (citations omitted).[1]   The Ninth Circuit rejected Plaintiffs' arguments in *Bamonte*:

In this case, the officers have cited no law, rule or regulation mandating on-premises donning and doffing. In *Steiner* and *Alvarez*, on-premises donning and doffing "fulfill[ed] mutual obligations of employer and employee." *Alvarez*, 339 F.3d at 901; *see also Steiner*, 350 U.S. at 252. In this case, the officers identify no obligation on either side that would be fulfilled by on-premises donning and doffing. Finally, in *Steiner*, *Alvarez*, and *Ballaris*, on-premises donning and doffing were expressly determined to be for the benefit of the employer. In contrast, in this case, the officers urged a conclusion of compensability primarily for reasons that were of sole benefit to the employee (risk of loss or theft of uniforms, potential access to gear by family members or guests, risk of performing firearm checks at home, discomfort while commuting, risk of being identified as officer while off-duty, and risk of exposing family members to contaminants and bodily fluids from encounters in the line of duty). Because of the disparity in the circumstances, we are not convinced that the holdings in *Steiner, Alvarez*, and *Ballaris* support a similar conclusion in this case that donning and doffing of uniforms and related gear on the employer's premises are compensable under the FLSA as "integral and indispensable" work activities.

*Balmonte*, 598 F.3d at 1225-26.  In light of *Bamonte*, the evidence

---

[1] The cases cited by Plaintiffs, *Martin v. City of Richmond*, 504 F. Supp. 2d 766, 776 (N.D. Cal. 2007) and *Nolan v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 70764 (C.D. Cal. 2009), predate *Bamonte* and are not persuasive on this point in light of the Ninth Circuit's treatment of the arguments countenanced therein.

Plaintiffs seek to rely on is insufficient as a matter of law to raise a triable issue regarding whether Plaintiffs are "required" to don and doff at the workplace. *See id*.

As Plaintiffs acknowledge, *Bamonte* forecloses the claims of non-THPVP deputies. *See, e.g., Reed v. County of Orange*, 716 F. Supp. 2d 876, 884 (C.D. Cal. 2010) (holding that *Bamonte* forecloses claims for donning and doffing of police uniforms and equipment not required to occur at workplace). Plaintiffs contend that THPVP deputies claims survive *Bamonte,* however, as THPVP deputies are required to don and doff their uniforms and equipment at home. Plaintiffs' contention is contrary to the Ninth Circuit's express determination in *Bamonte* that at-home donning and doffing is not compensable. 598 F.3d at 1229 (discussing support for the Court's "determination of the non-compensability of at-home donning and doffing"). It is rejected. Summary judgment is GRANTED on Plaintiffs' donning and doffing claims.

**B. Vehicle Commute Time**

Plaintiffs seek compensation for the time spent commuting to and from their duty assignments in County vehicles pursuant to the THPVP. Plaintiffs contend that such time is compensable because THPVP deputies conduct activities that are "integral and indispensable" to their employment duties during their commute.

In 1996, Congress amended the Portal-to-Portal Act by enacting the Employee Commuter Flexibility Act ("ECFA"). The ECFA provides that employers need not compensate employees for:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and

> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a)(emphasis added).  Here, it is undisputed that commute to and from home in take home vehicles is subject to an agreement– the THPVP.

Pursuant to the ECFA, employees are only entitled to compensation to the extent they perform additional legally cognizable work while driving to their workplace. *See Rutti v. Lojack Corp.*, 596 F.3d at 1053 (citing *Adams v. United States*, 471 F.3d 1321, 1325 (Fed. Cir. 2007) and *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1286-87 (10th Cir. 2006)).  In *Adams*, the Federal Circuit rejected the claims of government law enforcement agents seeking compensation for their commute from home to work in government-owned vehicles.  The plaintiffs in *Adams*

> argued that they had to be available for emergency calls, had to have their weapons with them, had to monitor their communication equipment, could not run any personal errands, and had to proceed directly from home to work and back without unauthorized detours or stops. The Federal Circuit held that pursuant to 29 U.S.C. § 254(a), merely commuting was insufficient; the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving.

**10**

1    *Rutii*, 596 F.3d at 1053 (citations and quotations omitted).

2    Relying on the rationale expressed by the Federal Circuit in

3    *Adams*, the Ninth Circuit rejected the plaintiff's claim that he was

4    entitled to compensation for his commute time because he was

5    required to have his cell phone on during his commute and could not

6    use his company vehicle for personal pursuits. *Rutti*, 596 F.3d at

7    1054-55. *Rutii* also cited the Federal Circuit's reasoning in *Bobo*

8    *v. United States*, 136 F.3d 1465 (Fed. Cir. 1998) with approval:

9         In *Bobo v. United States*, 136 F.3d 1465 (Fed Cir. 1998),
          a group of Border Patrol agent dog handlers sought
10        compensation for the time spent transporting their dogs
          between their homes and Border Patrol offices. *Id*. at
11        1466-67. They were not allowed to use the vehicles for
          personal use, were not allowed to make personal stops
12        during their commute, were required to wear their
          official uniforms while using the vehicles, were required
13        to monitor their radios, report their mileage and look
          out for suspicious activities. *Id*. at 1467. In addition,
14        they were required "to make stops for the dogs to
          exercise and relieve themselves." *Id*. Nonetheless, the
15        Federal Circuit held that even accepting the restrictions
          as compulsory and for the benefit of their employer, "the
16        burdens alleged are insufficient to pass the de minimis
          threshold." *Id*. at 1468. The court specifically noted
17        that "the main restriction on the INS Agents is the
          prohibition on making personal stops during their
18        commute," and held that "such a restriction on their use
          of a government vehicle during their commuting time does
19        not make this time compensable." *Id*.

20   *Rutii*, 596 F.3d at 1053.

21

22   Pursuant to *Rutii*, the fact that Plaintiffs are required to

23   monitor their communications equipment during their commute is

24   insufficient to transform their commutes into compensable work.

25   *Id*. at 1054 n.7. Although Plaintiffs may be called upon to

26   "engag[e] in the myriad of duties performed by a patrol deputy"

27   during their commutes, (Doc. 100, Opposition at 17), the

28   possibility of having to perform compensable activities during

their commutes does not transform Plaintiffs' entire commutes into compensable work, *see id; accord Adams,* 471 F.3d at 1326-27; *Bobo*, 136 F.3d at 1468; *Aiken v. City of Memphis*, 190 F.3d 753, 759 (6th Cir. 1999) ("monitoring a police radio does not convert commute time into compensable work").   It is undisputed that, pursuant to County policy, deputies are instructed to report through the payroll system time spent responding to calls during their commute, and that such time is compensable. (Doc. 101, Plaintiffs' Response to DUMF Nos. 37, 38).[2]   In other words, to the extent Plaintiffs are called upon to perform legally cognizable work during their commute, County policy requires that they be compensated for such work.   The County's motion for summary judgment is GRANTED on Plaintiffs' claims for compensation for their commute time.

## C. Vehicle Maintenance Time

The SAC alleges that Plaintiffs are not compensated for "cleaning and maintenance of...vehicles." (SAC at 2).   In support of their contention that Plaintiffs "clean and maintain vehicles on

---

[2] Plaintiffs attempt to create a factual dispute regarding whether the County adheres to its stated policy requiring compensation for time spent by deputies performing work activities during their commutes.   As an initial matter, even accepting Plaintiffs' representation as true, the fact that the County may have failed to compensate some deputies for cognizable work performed during their commutes is not relevant to the issue of whether the commutes are compensable in and of themselves.   Deputies that have been denied compensation for legally cognizable work performed during their commutes may be entitled to compensation under the FLSA for such work, but not for their entire commutes. *See Rutti*, 596 F.3d at 1054; *see also Adams,* 471 F.3d at 1326-27. Further, Plaintiffs submit no competent evidence that the County refuses to compensate deputies for work performed during their commutes.   Rather, Plaintiffs submit only the vague inadmissible triple-hearsay statement of the President of the Fresno Deputy Sheriff's association, who represents "we have received multiple complaints about the Department denying overtime requests for lengthy DUI stops made by deputies during their commutes." (Doc. 106, Schmidt Decl. at 5).   Critically, Plaintiffs' second amended complaint does not properly assert a claim for compensation based on time spent performing legally cognizable work during commutes; the complaint alleges only that the County "fail[s] to compensate Plaintiffs...*for the time spent traveling to and from work*..." (Doc. 27, SAC at 2) (emphasis added).

their own time," Plaintiffs offer the deposition testimony of Jason
Deimerly and John Capriola and the Declarations of Eric Schmidt and
John Capriola. (Doc. 102, Plaintiffs' Statement of Disputed Fact
No. 80). The evidence provided by Plaintiffs indicates that the
"cleaning and maintenance" Plaintiffs seek compensation for
consists of washing the exteriors and cleaning the interiors of
patrol vehicles. Pursuant to the terms of the THPVP, deputies are
also required to check vehicles' fluid levels and maintain proper
tire inflation. Plaintiffs contend that their cleaning and
maintenance of patrol vehicles is "integral and indispensable" to
their duties. Plaintiffs cite no authority in support of their
expansive interpretation.

   The FLSA expressly excludes "activities performed by an
employee which are incidental to the use of [an employer's] vehicle
for commuting" from the category of compensable "principal
activities" under the FLSA. 29 U.S.C. § 254(a). Although the FLSA
does not define "incidental activities," routine visual inspections
of fluid levels and tire pressure levels needed to ensure that a
vehicle is in safe operating condition appear to be incidental to
use of the vehicle within the meaning of section 254(a). *See Aiken*,
190 F.3d at 759. As the Sixth Circuit noted in *Aiken*:

> The legislative history of the 1996 amendments [to the
> FLSA] is instructive [on the issue of cleaning and
> maintenance claims]: "It is not possible to define in all
> circumstances what specific tasks and activities would be
> considered 'incidental' to the use of an employer's
> vehicle for commuting. . .*Routine vehicle safety
> inspections or other minor tasks have long been
> considered preliminary or postliminary activities and are
> therefore not compensable*." H.R. Rep. 104-585.

*Id.* (emphasis added).

**13**

Assuming *arguendo* that section 254(a) does not expressly preclude Plaintiffs' cleaning and maintenance claims, Plaintiffs cannot establish that washing their patrol cars and conducting routine safety inspections are activities that are integral and indispensable to the principal activities of their employment.[3]

"There is a difference between an indispensable activity and an integral activity." *Bamonte,* 598 F.3d at 1232. "That an activity is indispensable does not necessarily mean that the activity is integral to the principal work performed." *Id.* (citing *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 592-93 (2nd Cir. 2007)). In order for an activity to be "integral," the activity must be "intrinsically connected" to the unique duties of employment. *See Gorman*, 488 F.3d at 591 (discussing *Mitchell v. King Packing Co.*, 350 U.S. 260, 262 (1956)). The Second Circuit's analysis in *Gorman* provides examples of tasks that are "integral" to various jobs:

> Sharpening the knife is integral to carving a carcass, *Mitchell*, 350 U.S. at 263; powering up and testing an x-ray machine is integral to taking x-rays, *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 717-18 (2d Cir. 2001); and feeding, training and walking the dog is integral to the work of a K-9 officer, *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646 (2d Cir. 1995), limited in part by *IBP*, 546 U.S. at 21. *See also IBP*, 546 U.S. at 40-41 (observing that activities which are "necessary" (or indispensable) to a principal activity are not thereby "integral and indispensable"); 29 C.F.R. § 790.7(d) (noting, for example, that "the carrying by a logger of a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area . . . is not

---

[3]    It is questionable that the specific activity Plaintiffs' seek compensation for, off-duty cleaning and maintenance of patrol vehicles, constitutes "work" under the FLSA, as it is neither required nor controlled by the County.  It is undisputed that the County provides on-duty time to complete these tasks for which Plaintiffs are compensated.

**14**

> segregable from the simultaneous performance of his assigned work" and is thus integral to his principal activities) (emphasis added).

> ...*Steiner* [] supports the view that when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there, just as a diver's donning of wetsuit, oxygen tank and mouthpiece may be integral to the work even though it is not the (underwater) task that the employer wishes done.

*Id*. Here, Plaintiffs' cleaning and maintenance of their vehicles during off-duty time is not intrinsically related to Plaintiffs' law enforcement function. Making sure a vehicle has sufficient radiator fluid, oil, and tire pressure is not uniquely related to the duties of a Sheriff; rather, such tasks are attendant to any profession in which an automobile is utilized. The cleaning and maintenance Plaintiffs' seek compensation for is related to Plaintiffs' employment only in the attenuated sense that such activities are necessary to safely operate any automobile. As Plaintiffs' off-duty washing and maintenance of their take home patrol vehicles are tasks incidental to use of the vehicles and are not integral to on-the-job performance of the vehicles, they are not compensable under the FLSA. *Aiken*, 190 F.3d at 759; 29 U.S.C. § 254(a); *but see Sjoblom v. Charter Communs., LLC*, 571 F. Supp. 2d 961, 963, 972 (W.D. Wis. 2008) (suggesting vehicle maintenance is compensable where employees were required, *inter alia*, to change oil, clean, organize, and supply company vehicles oil on off-duty time); *Powell v. Carey Int'l, Inc.*, 514 F. Supp. 2d 1302, 1308 (S.D. Fla. 2007) (denying summary judgment where record did not contain sufficient facts to determine whether cleaning, inspection,

**15**

1    and maintenance activities required were de minimis).[4]   The
2    County's motion for summary judgment is GRANTED as to Plaintiffs'
3    vehicle maintenance claims.

4    **D. Firearms Qualification and Maintenance**

5         According to Plaintiffs evidence, firearms qualification takes
6    approximately two hours, most of which is spent cleaning the
7    weapons used during qualification. (Doc. 108, Capriola Dep. RT at
8    84).   The County contends it is entitled to summary judgment on
9    Plaintiffs' claims for compensation for off-duty firearms
10   qualification and maintenance because the County provides on-duty
11   time to perform the qualifications, and because County policy
12   permits deputies to submit overtime requests for firearms
13   qualification where it cannot be completed during normal duty
14   hours. The County avers that Plaintiffs off-duty qualification and
15   maintenance is done as a matter of personal preference.

16        Whether the County permits Plaintiffs to submit overtime
17   requests when firearms qualification and maintenance cannot be
18   completed during normal duty hours is subject to a factual dispute.
19   Deputy Jason Deimerly testified under oath that a supervisory
20   employee of the County, Sergeant Frances Devins, instructed
21   deputies during a briefing session that "overtime is not authorized
22   for [firearms] qualifications." (Doc. 112-5, Deimerly Dep. RT at

23   _____

24   [4] Unlike the instant case, both *Powell* and *Sjoblom* concerned instances where the
     employees were required to perform vehicle maintenance during off-duty time.
25   Further, at least some of the vehicle maintenance tasks plaintiffs sought
     compensation for in *Powell* and *Sjoblom* were integral to their unique duties of
26   employment. In *Powell*, limousine drivers were required to restock their vehicles
     with amenities, the provision of which was inherently part of the service
27   provided by the limousine company. Similarly, in *Sjoblom*, drivers of a cable
     company's vehicles were required to re-stock the vehicles with materials
28   necessary to provide cable services to customers.

**16**

116).   The County disputes the meaning of Deimerly's testimony, noting that Deimerly's responses to follow up questions suggest that Devins' statement can be construed as an instruction to deputies to manage their time so as to have sufficient time for on-duty firearms qualification.   In the context of Defendants' motion for summary judgment, all inferences regarding Devins' statement must be drawn in favor of Plaintiffs.   As a rational jury presented with Deimerly's testimony could draw the inference that Devins' was instructing deputies not to submit overtime requests for off-duty weapons qualification even when such off-duty qualification was required by the circumstances, there is a factual dispute regarding whether the County actually permits officers to submit overtime requests for off-duty weapons qualification, notwithstanding its state policy.   Summary judgment is DENIED as to Plaintiffs' off-duty weapons qualification claims.[5]

**E. Lunch Periods**

Plaintiffs' SAC asserts that Courtroom Deputy Plaintiffs are entitled to compensation for the unpaid meal period provided by the County because such Plaintiffs routinely remain in uniform, maintain radio contact, are subject to call backs for service, and are frequently interrupted by citizens requesting information or assistance.   The County contends it is entitled to summary judgment on Plaintiffs' meal period claims because Courtroom Deputies are not required to remain in uniform or perform any employment duties

---

[5]   The extent to which the SAC seeks compensation for time spent maintaining firearms at times other than during firearms qualification is unclear.   Neither party has presented evidence concerning the frequency of such maintenance or the amount of time required to conduct such maintenance.

during their meal breaks.  Plaintiffs respond that "the amount of time necessary to don, doff, and then re-don the uniform and equipment is considerably prohibitive."  (Doc. 101, Plaintiffs' Response to DUMF No. 73).

Employers providing unpaid meal breaks must "completely reliev[e]" employees "from duty for the purposes of eating regular meals" for a period of 30 minutes or more. 29 C.F.R. § 785.19. Applicable regulations provide that "the employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." *Id.*; *see Brennan v. Elmer's Disposal Serv., Inc.,* 510 F.2d 84, 88 (9th Cir. 1975) (holding that "[a]n employee cannot be docked for lunch breaks during which he is required to continue with any duties related to his work").

Plaintiffs' claims are predicated on the fact that some Courtroom Deputies remain in uniform during their meal periods, and that in such instances, they are often called upon to perform tasks akin to their normal employment duties.  However, it is undisputed that Courtroom Deputies are not *required* by the County to remain in uniform during their meal periods.  Plaintiffs do not contend that the time it takes to doff and re-don their uniforms and gear prohibits them from changing out of their uniforms and gear during their lunch period; they contend only that the time involved is "considerably prohibitive."  It is undisputed that Plaintiffs are provided a one-hour meal period, during which they are not *required* to remain in uniform or perform work duties.  Summary judgement is GRANTED on Plaintiffs' meal break claims.

///

**18**

**F. Plaintiffs' Motion**

Plaintiffs move for summary judgment on issues related to their donning and doffing claims.  Plaintiffs motion is MOOT, as *Bamonte* forecloses Plaintiffs' donning and doffing claims.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Summary judgment is GRANTED for Defendants on Plaintiffs' donning and doffing claims;

2) Summary judgment is GRANTED for Defendants on Plaintiffs' commute-time claims;

3) Summary judgment is GRANTED for Defendants on Plaintiffs' vehicle maintenance claims;

4) Summary judgment is GRANTED for Defendants on Plaintiffs' meal break claims;

5) Summary judgment is DENIED on Plaintiffs' firearms qualification and maintenance claims;

6) Plaintiffs' motion for summary judgment is DENIED as MOOT; and

7) Defendants shall submit a form of order consistent with this memorandum decision within five days of electronic service of this decision.

IT IS SO ORDERED.

Dated:   **August 2, 2011**               _____/s/ Oliver W. Wanger_____
                                                         UNITED STATES DISTRICT JUDGE

19